IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT D. GERINGER,<br><br>                 Plaintiff,<br><br>vs.<br><br>D. RAY STRONG, in his capacity as Liquidating Trustee of the Liquidating Trust for the Consolidated Legacy Debtors, the Liquidating Trust for Castle Arch Opportunity Partners I, LLC, and the Liquidating Trust for Castle Arch Opportunity Partners II, LLC,<br><br>                 Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:16-CV-391-TC |

Plaintiff Robert Geringer alleges that Defendant D. Ray Strong (Trustee) breached a contract to sell Mr. Geringer land in Smyrna, Tennessee. He also brings a claim for breach of the implied covenant of good faith and fair dealing. The Trustee's motion for summary judgment on those claims is now before the court.

The court agrees with the Trustee that Mr. Geringer's claims rely on a notice provision that is not legally binding. Specifically, that notice provision was set forth in a preliminary agreement that, when merged into an integrated contract, was extinguished and is not enforceable. For this and other reasons set forth below, the court GRANTS the Trustee's motion.

## **FACTS**

In October 2011, a state-appointed receiver filed Chapter 11 bankruptcy petitions for Castle Arch Real Estate Investment Company (CAREIC) and its related entities in the District of Utah. In May 2012, the bankruptcy court appointed Mr. Strong as the Chapter 11 Trustee for CAREIC.

After CAREIC filed for bankruptcy, Mr. Geringer (a former manager of CAREIC) filed an unsecured claim against the estate. In addition, Mr. Geringer filed an objection in the bankruptcy case regarding a settlement agreement between the Trustee and William Warwick. In the meantime, the Trustee filed claims against Mr. Geringer and others for alleged wrongdoing in their capacities as former managers of CAREIC.

Between January and May 2015, the Trustee and Mr. Geringer engaged in mediation to resolve their differences. The parties contemplated a settlement agreement under which Mr. Geringer would (a) buy one or more pieces of real estate from the Trustee at an above-market price and (b) withdraw the Warwick Objection, all in exchange for the Trustee's release of claims against Mr. Geringer.

During mediation, Mr. Geringer expressed interest in purchasing a 484-acre parcel of real property located in Smyrna, Tennessee (the Smyrna Property), from the Trustee as part of the settlement. But the Trustee already had a sale and purchase agreement with DSSIII Holding Company, LLC, for the Smyrna Property. (See October 29, 2014 Real Estate Purchase & Sale Agreement (DSSIII Agreement), Trustee App. Doc. 27 at Apx. 285–318, ECF No. 79-27.) In fact, the Bankruptcy Court had already approved the Trustee's sale of the Smyrna Property to DSSIII, including the March 2015 Amendment to the DSSIII Agreement, which extended

DSSIII's due diligence period and set forth four milestones that DSSIII was required to pursue "in good faith with commercially reasonable diligence." (First Am. to DSSIII Agreement, Trustee App. Doc. 29 at Apx. 351–53, ECF No. 79-29.)

Although the Smyrna Property was under contract, the sale was not yet final because DSSIII was conducting due diligence on the property. During that time, Mr. Geringer offered more money for the property along with more favorable terms. When DSSIII subsequently demanded a one-third reduction in the agreed-upon price, the Trustee seriously considered Mr. Geringer's offer because he felt he had a duty to maximize the estate. Still, in order to sell the property to Mr. Geringer, the Trustee would have to accomplish two things.

He would have to legitimately free himself of his obligations to DSSIII. To do that, he would have to show that DSSIII was in breach of the contract, for example by failing to pursue the four milestones "in good faith and with commercially reasonable diligence." (Id.) He would also need bankruptcy court approval for the new settlement and sale agreement with Mr. Geringer. Under Bankruptcy Rule 9019, a settlement agreement with a Trustee is not enforceable until approved by the Bankruptcy Court. Travelers Ins. Co. v. Am. Agcredit Corp. (In re Blehm Land & Cattle Co.), 859 F.2d 137, 141 (10th Cir. 1988). Similarly, under 11 U.S.C. § 363(b)(1), a trustee may sell property of the estate outside of the ordinary course of business only with bankruptcy court approval, "after notice and a hearing." In other words, without Bankruptcy Court approval of the proposed sale to Mr. Geringer, the Agreement would not be enforceable. See G-K Dev. Co., Inc. v. Broadmoor Place Invs., L.P. (In re Broadmoor Place Invs., L.P., 994 F.2d 744, 745 (10th Cir. 1993); In re Landscape Properties, Inc., 100 B.R. 445, 447 (Bankr. E.D. Ark. 1988) (although competing offers are "denominated 'real estate contract'

3

there simply is no contract without bankruptcy court approval") (cited in G-K Dev. Co., 994 F.2d at 745 n.1).

Recognizing the obstacles to the proposed sale, the parties nevertheless hurriedly entered into a preliminary agreement—the Memorandum of Understanding, referred to in the Trustee's briefs as the "Term Sheet"—to memorialize material points of the agreement reached in mediation and identify the necessary contingencies: "This MOU is subject to the approval of the bankruptcy court, and the Trustee's ability to terminate the current purchase contract" with DSSIII. (May 20, 2015 Mem. of Understanding ("Term Sheet"), Trustee App. Doc. 3 at Apx. 20–22, ECF No. 79-3.)

The Trustee's alleged breach of the Term Sheet's notice provision is the sole basis for Mr. Geringer's claims. That provision set forth one of the steps the Trustee would have to take to terminate the DSSIII Agreement: "The Trustee will within 5 days provide notice of termination of the contract to sell the Smyna [sic] to DSSIII and will provide notice of this sale and of the motion to approve this sale to DSSIII Holding Co., LLC."[1] (Term Sheet ¶ 7.)

But, significantly, approximately one month after signing the Term Sheet, the parties executed the June 30, 2015 Land Purchase Agreement (Agreement).[2] (Trustee App. Doc. 32 at

---

[1]The notice provision is vague because it does not list any date or event within which the Trustee was required to provide notice to DSSIII. Mr. Geringer contends that notice was to be given within five days after execution of the Term Sheet. (See First Am. Compl. ¶ 18.) The Trustee offers evidence that the language required notice of termination within five days of the execution of the Agreement, not the Term Sheet. (See Trustee's Reply at 11–12, ECF No. 83.) But the court need not address this issue because the court holds that the Term Sheet is not a binding document.

[2]The Trustee refers to this document throughout his briefs as the "Settlement and Sale Agreement."

4

Apx. 423–36, ECF No. 79-32.) That Agreement contains an integration clause:

> This Agreement constitutes the sole and entire agreement of the parties and is binding upon and shall inure to the benefit of Seller and Purchaser, their respective heirs, successors, and legal representatives and permitted assigns. . . . All prior discussions, negotiations and agreements are merged herein and have no further force or effect.

(Id. § 19(c).)

The Agreement also expressly stated that the bankruptcy court's approval and termination of the DSSIII Agreement were necessary conditions of the Agreement. In the section labeled "Contingencies," the Agreement sets forth the following caveat:

> The Parties agree that this Agreement is <u>conditioned on and is subject to</u> (i) the Liquidating Trustee's <u>ability to terminate the DSSIII Purchase Agreement solely as determined by the Bankruptcy Court</u> and (ii) <u>the Bankruptcy Court's entry of an Order approving this Agreement</u> as to Purchaser or as to a person making a higher and better offer than the Purchaser that is accepted by the Liquidating Trustee. <u>If the Bankruptcy Court does not approve</u> this sale to either the Purchaser or to a person making a higher and better offer <u>for any reason</u>, this Agreement shall be <u>null, void and of no force or effect</u> and the Parties shall be in the same position that they were in as though this Agreement had never been executed.

(Id. § 6(a) (emphasis added).)

Notably, the Agreement's recitals recognized that the Trustee had already given notice to DSSIII: "On June 30, 2015, the Liquidating Trustee served a Notice of Termination of Real Estate Purchase and Sale Agreement on DSSIII in accordance with its duty as a fiduciary to accept any higher and better offers for the purchase of the Property." (Recitals in Agreement at 1, Apx. 423.) In that Notice of Termination, the Trustee stated that he was terminating the contract with DSSIII because, among other things, "on or about May 12, 2015 and thereafter, DSSIII indicated that it would require material changes and concessions to the Purchase Agreement including yet further extensions of its Due Diligence Period," that "[i]n addition,

5

DSSIII has not met many of the milestones under the Amendment," and that "[i]n the meantime, the Seller has received an offer that Seller believes materially higher and better, both in amount and other terms." (Letter from Peggy Hunt, Dorsey & Whitney LLP, to Tyson J. Reilly, DSSIII Holding Co., LLC (June 30, 2015), Trustee App. Doc. 22 at Apx. 145–46, ECF No. 79-22.)

On July 6, 2015, as part of his obligations under the Agreement, the Trustee submitted a motion to the Bankruptcy Court seeking approval of the settlement and sale of the Smyrna property to Mr. Geringer (i.e., approval of the Agreement). DSSIII adamantly opposed the motion and did not acquiesce in any of the Trustee's notices of termination. DSSIII objected to the sale and requested an emergency status conference. DSSIII told the Bankruptcy Court that the Trustee was "attempting to sell valuable real property, which is under contract to DSSIII, to another party," and that DSSIII "remains ready, willing and able to close immediately . . . but is being prevented from doing so by the trustee." (DSSIII Emergency Request for Status Conference, Trustee App. Doc. 35 at Apx. 558, ECF No. 79-35.)

On July 14, 2015, the Bankruptcy Court held a hearing based on DSSIII's emergency request. After hearing from the parties, the Bankruptcy Court continued all further hearings on the Trustee's motion to sell the Smyrna Property, without date, which effectively denied the Trustee's sale motion (the closing date for the sale to DSSIII was apparently scheduled for July 30, 2015, less than two weeks after the court's decision). (See Tr. of July 28, 2015 Bankr. Ct. Hr'g at Apx. 742, Trustee App. Doc. 40, ECF No. 79-40.) The Bankruptcy Court explained its reasons, including the following: "I think parties such as [DSSIII] have a right to rely on orders of this Court approving contracts between fiduciaries that appear before this Court, and <u>I am not going to allow the trustee on the state of the record to sell the property to somebody else when</u>

<u>the buyer indicates that it is ready, willing, and able to perform according to the contract that it signed and that I approved</u>." (Tr. of July 14, 2015 Hr'g in Bankr. Ct. at Apx. 180–82, Trustee App. Doc. 25, ECF No. 79-25 (emphasis added).) The Trustee filed an emergency motion for reconsideration of the court's indefinite continuance of hearings on his motion for approval of the Agreement with Mr. Geringer. (See July 23, 2015 Emergency Mot. for Reconsideration, Trustee App. Doc. No. 39, ECF No. 79-39.) The Bankruptcy Court denied it two days before the scheduled closing with DSSIII. (See Tr. of July 28, 2015 Hr'g at Apx. 742, 752–53.) With lack of Bankruptcy Court approval,[3] the Agreement was, as the integration clause clearly states, "null, void and of no force or effect" and the parties were "in the same position that they were in as though this Agreement had never been executed." (Agreement § 6(a).)

The Trustee did not sell the Smyrna property to Mr. Geringer. Mr. Geringer followed up with this suit, alleging breach of contract and breach of the implied covenant of good faith and fair dealing.

Mr. Geringer bases his claim for breach of contract on the Term Sheet, not the Agreement. According to Mr. Geringer's logic, when the Agreement failed (in particular, for lack of Bankruptcy Court approval), the parties' relationship reverted back to the Term Sheet,

---

[3]Mr. Geringer contends that "[t]he result of the July 14, 2015 hearing was simply that the hearing on Mr. Strong's sale motion was continued without date." (Geringer's Opp'n at 47, ECF No. 80.) According to Mr. Geringer, "the reason [the] bankruptcy court never approved the Agreement was that Mr. Strong never asked the bankruptcy court to approve it. Mr. Strong simply failed to prosecute his own motion." (Id. at 48.) The record belies Mr. Geringer's assertion. The Trustee's motion to the Bankruptcy Court expressly asked for "approval of sale of property" in Smyrna, Tennessee, to Mr. Geringer. (See July 6, 2015 Mot. of Trustee, Trustee App. Doc. 32, ECF No. 79-32.) And his motion to reconsider shows that the Trustee did prosecute his motion to the best of his ability under the circumstances.

7

which the Trustee breached by failing to give the five-day notice to DSSIII.

Mr. Geringer also ties his claim for breach of the implied covenant of good faith and fair dealing to the Term Sheet, not the Agreement. Mr. Geringer alleges that the Trustee "acted with an improper motive and/or not in good faith when he failed to send notice of termination of the contract to sell the Smyrna Property to DSSIII when required under the [Term Sheet.]" (First Am. Compl. ¶ 30 (emphasis added).) He further alleges that the Trustee "encouraged DSSIII to continue its efforts to complete due diligence on the Smyrna acquisition, and ultimately elected to sell the Smyrna Property to DSSIII." (Id.) Assuming the truth of those allegations, Mr. Geringer concludes that the Trustee's "failure to terminate the DSSIII Contract when he had the absolute right to do so[4] . . . . gave DSSIII the ability, which it exercised [in Bankruptcy Court], to force Mr. Strong to close the DSSIII Contract and sell the Smyrna Property to DSSIII." (Geringer's Opp'n at 48, ECF No. 80.)

## **ANALYSIS**

The Trustee's two main arguments[5] focus on the merger doctrine and failure of proof of causation. First, the Trustee contends that the Term Sheet was superseded by the Agreement, which has an integration clause and does not contain the five-day notice provision. Second,

---

[4]The Trustee strongly objected to Mr. Geringer's characterization of the Trustee's rights under the DSSIII Agreement. Concerning Mr. Geringer's comment that the Trustee had "an absolute and immediate right to terminate the DSSIII Contract," the Trustee said such a comment was "patently and demonstrably false." (Trustee's Reply at 11.) Although the record supports the Trustee's characterization, the court need not resolve the scope of the Trustee's rights under the DSSIII Agreement at that time.

[5]The Trustee offers alternative reasons to dismiss Mr. Geringer's claims. Because the Trustee's two key points are sufficient bases for granting summary judgment, the court will not address the parties' remaining arguments.

according to the Trustee, Mr. Geringer has provided no evidence tying the Trustee's alleged breach to Mr. Geringer's claimed damages.

For the reasons set forth below, the court agrees with the Trustee.

## Standard of Review

Federal Rule of Civil Procedure 56 permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). The court must draw all reasonable inferences in favor of the nonmoving party when examining the record. Id. at 250.

The Trustee, as movant, bears the burden of demonstrating that there is no reasonable basis upon which a jury could find for Mr. Geringer. In response, Mr. Geringer must establish a genuine issue for trial. If he fails to meet that burden, the court must grant of summary judgment.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (emphasis added). "[A] mere scintilla of evidence supporting the nonmoving party theory does not create a genuine issue of material fact."

Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) (emphasis added).

## Breach of Contract

Mr. Geringer claims that the Trustee breached the Term Sheet, not the Agreement. But the integration clause in the Agreement makes the Term Sheet legally irrelevant. With no enforceable notice provision, there can be no breach of that notice obligation. Accordingly, the Trustee is entitled to summary judgment on the breach of contract claim.

**1.** *Integration*

Mr. Geringer does not have a claim for breach of the Term Sheet because that document was merged into the Agreement through the integration clause.

> This Agreement constitutes the sole and entire agreement of the parties and is binding upon and shall inure to the benefit of Seller and Purchaser, their respective heirs, successors, and legal representatives and permitted assigns. . . . <u>All prior discussions, negotiations and agreements are merged herein and have no further force or effect</u>.

(Agreement § 19(c) (emphasis added).) A fully integrated agreement, such as the Agreement, supersedes a prior agreement dealing with the same subject matter (for example, the Term Sheet), precluding a claim for breach of the prior agreement. Tangren Family Trust v. Tangren, 182 P.3d 326, 331–32 (Utah 2008) (holding that evidence of earlier or contemporaneous agreements or discussions was not admissible to contradict terms of an integrated written agreement and that the earlier agreement had no force or effect); Novell, Inc. v. The Canopy Group, Inc., 92 P.3d 768, 772 (Utah Ct. App. 2004) (same); Ringwood v. Foreign Auto Works, Inc., 671 P.2d 182, 183 n.2 (Utah 1983) ("'[A]ny time a contract supersedes and incorporates all or part of an earlier agreement it may be said that the earlier agreement is merged into the later.'") (quoting J. Calamari and J. Perillo, The Law of Contracts § 21-13 (1977)), overruled on

other grounds by Tangren Family Trust v. Tangren, 182 P.3d 326 (Utah 2008).

Here, the Agreement and the Term Sheet indisputably dealt with the same subject—the purchase of the Smyrna Property by Mr. Geringer in exchange for a release of claims, all conditioned on the Trustee's ability to terminate the DSSIII Agreement and receive Bankruptcy Court approval. And there is no reasonable dispute that the Agreement is fully integrated.

"An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." Novell, 92 P.3d at 772. The parties did that in the Agreement. Section 19(c) of the Agreement unambiguously and expressly merges "[a]ll prior discussions, negotiations and agreements" into the Agreement. (Id.) See also Tangren, 182 P.3d at 331 n.19 ("'[T]he merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated.'") (quoting Howard v. Perry, 106 P.3d 465, 467–68 (Idaho 2005).

Section 19(c) provided that the Term Sheet, including the five-day notice provision, had "no further force or effect" once the Agreement was executed. Apart from the express language, two other aspects of the Agreement are proof that the five-day notice requirement was no longer relevant. First, the Agreement did not contain a provision equivalent to the Term Sheet's notice requirement. Second, its recital contain the following express language: "On June 30, 2015, the [Trustee] served a Notice of Termination of the Real Estate Purchase and Sale Agreement on DSSIII." (Agreement at p. 1.) In short, the five-day notice provision did not survive the merger.

Despite the integration clause, Mr. Geringer argues that when the Agreement failed (i.e., it became "null and void" as a result of the Bankruptcy Court's refusal to approve the Agreement), Section 6(a) of the Agreement returned the parties to the Term Sheet rather than to

no agreement at all. His argument is contrary to the language of the Agreement and is "an attempt to bootstrap around the clear legal effect of the parol evidence rule." (Trustee's Reply at 4, ECF No. 83.)

As noted above, once the parties entered into the Agreement, all previous negotiations, representations, disputes, preliminary and earlier tentative agreements were, as a matter of law, merged into one integrated whole. Consequently, earlier contradictory terms (such as the five-day notice requirement) had no effect. Furthermore, when the Bankruptcy Court refused to approve the sale to Mr. Geringer, Section 6 of the Agreement assured that no portion of the parties' agreement survived from that date onward. It was "null, void and of no further force or effect." (Agreement § 6(a).) As the Trustee notes, "[r]eading Section 6.a. the way Geringer does defeats this purpose. Section 6.a. accomplishes nothing if it returns the parties to an earlier, less-refined, unintegrated, version of the same agreement." (Trustee's Reply at 4 (emphasis in original).)

The "null and void" language does not, however, make the integration invalid. The Term Sheet lost all legal significance on June 30, 2015, the date the Agreement was executed. Later unsatisfied contingencies, such as failure to obtain Bankruptcy Court approval, do not reverse that merger or revive a contradictory term. See Restatement (2d) of Contracts § 213(3) (Am. Law Inst. 1981) ("[A]n integrated agreement, even though not binding, may be effective to render inoperative a term which would have been part of the agreement if it had not been integrated."); id. cmt. d; Alphonse Hotel Corp. v. Tran, No. 13 Civ. 7859(DLC), 2014 WL 3801230, at *8 (S.D.N.Y. Aug. 1, 2014) (holding that unambiguous integration clause in non-binding contract discharged a contradicting material term of an earlier contract), aff'd, Alphonse

Hotel Corp. v. Tran, 828 F.3d 146, 155, 159 (2nd Cir. 2016). Accordingly, the contradictory five-day notice provision cannot be enforced against the Trustee.

**2.      *Causation***

Alternatively, even if the Term Sheet was an enforceable contract, Mr. Geringer does not provide any evidence of causation. For this separate reason, the Trustee is entitled to summary judgment.

To succeed on his claims, Mr. Geringer must prove, among other things, that the Trustee's alleged breach caused the Term Sheet to fail and that, as a result, Mr. Geringer suffered damages. See Sanpete Am., LLC v. Willardsen, 269 P.3d 118, 132 (Utah 2011) ("Causation is . . . an integral element of awarding damages in contract . . . actions[.]"). But he has not presented any evidence of a link between the Trustee's failure to give notice to DSSIII by May 25, 2015, failure of the Term Sheet's contingencies, and Mr. Geringer's claimed damages.

As Mr. Geringer points out, causation is typically a fact-intensive issue not amenable to summary judgment. But if there is a complete lack of evidence of causation, the court may rule on the issue as a matter of law.

> Proximate cause issues can be decided as a matter of law in two circumstances:
> (i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and
> (ii) <u>when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law</u>.

Harding v. Atlas Title Ins. Agency, Inc., 285 P.3d 1260, 1263 (Utah Ct. App. 2012) (internal quotation marks and citation omitted) (emphasis added).

The ability of the Trustee to withdraw from the DSSIII Agreement (without breaching it) and to obtain Bankruptcy Court approval of the sale to Mr. Geringer were both necessary

contingencies in the Agreement. It is undisputed that neither was satisfied. But there is no evidence that the Trustee's failure to provide notice by May 25, 2015, caused the failure of either of these contingencies.[6]

The Trustee has established that DSSIII was "irretrievably committed to the Smyrna Property before May 25, 2015," and that DSSIII strongly resisted the Trustee's attempt to terminate the DSSIII Agreement. (See Trustee's Reply at 6.) And it is clear from the transcript of the Bankruptcy Court's hearing on DSSIII's objection that the timing of any notice to DSSIII was irrelevant to that court's decision:

> I think parties such as [DSSIII] have a right to rely on orders of this Court approving contracts between fiduciaries that appear before this Court, and <u>I am not going to allow the trustee on the state of the record to sell the property to somebody else when the buyer indicates that it is ready, willing, and able to perform according to the contract that it signed and that I approved</u>.

(Tr. of July 14, 2015 Hr'g in Bankr. Ct. at Apx. 180–82, Trustee App. Doc. 25, ECF No. 79-25 (emphasis added).)

Moreover, it would be speculation to conclude that if the Trustee had given notice by May 25, 2015, DSSIII would have acquiesced to the Trustee's assertion that DSSIII did not fulfill its due diligence obligations and that the Bankruptcy Court would have ruled differently. No reasonable jury could infer causation from such speculation. Giles v. Mineral Resources Int'l,

---

[6] The fact that Mr. Geringer suffered his alleged damages after the five-day deadline expired does not alone establish causation. As the Trustee points out, causation cannot be established "by timeline." (See Trustee's Reply at 5, n.3.) "[C]ourts do not assume a causal connection between two events merely because one follows the other," and "[e]vidence that relies exclusively on the *post hoc ergo propter hoc* fallacy—'after this and therefore because of this'—is not competent." USA Power, LLC v. PacifiCorp, 372 P.3d 629, 678 (Utah 2016) (quoting Breton v. Clyde Snow & Sessions, 299 P.3d 13, 17 (Utah Ct. App. 2013)).

14

Inc., 338 P.3d 825, 827 (Utah Ct. App. 2014) (noting that although the court must view the facts and all reasonable inferences in a light most favorable to the non-movant, "[r]easonable inferences must be more than speculation and conjecture.").

Because Mr. Geringer has no evidence of causation, the Trustee is entitled to summary judgment on Mr. Geringer's breach of contract claim.

### Breach of the Implied Covenant of Good Faith and Fair Dealing

In Utah, "a covenant of good faith and fair dealing inheres in most, if not all, contractual relationships." St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 199 (Utah 1991). Under that covenant, "each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." Id.

The circumstances cited by Mr. Geringer to establish his claim for breach of the implied covenant are the same circumstances upon which he relies to allege breach of contract. That is, Mr. Geringer alleges that the Trustee violated the implied covenant underlying the Term Sheet by failing to give notice to DSSIII by May 25, 2015. But his theory does not create an independent cause of action for breach of the implied covenant for at least two reasons.

First, the rule imposing an implied covenant presupposes the existence of an enforceable contract. As the Utah Supreme Court noted in 2014,

> [W]e have consistently rejected the notion of a free-standing implied covenant of good faith and fair dealing in the absence of a contract. Brehany v. Nordstrom, Inc., 812 P.2d 49, 5 (Utah 1991). And the implied covenant cannot "establish new, independent rights or duties not agreed upon by the parties." Id. Because we conclude that [the plaintiff] failed to establish the existence of [a] . . . contract,

15

he cannot establish a violation of the covenant of good faith and fair dealing. Tomlinson v. NCR Corp., 345 P.3d 523, 531 (Utah 2014). Here, as the court has already held, the Term Sheet has no legal significance. Accordingly, it is not an enforceable contract out of which an implied covenant can arise. Id.; see also A.I. Transport v. Imperial Premium Finance, 862 F. Supp. 345 (D. Utah 1994) ("[I]f there was no breach of the original agreement . . . , there could be no breach of an implied covenant of good faith and fair dealing."). In other words, Mr. Geringer focuses on an implied covenant that lived and died with the Term Sheet. Any parallel claim for breach of the implied covenant of the Term Sheet that may have existed was extinguished when the Term Sheet was merged into the Agreement.

Second, Mr. Geringer focuses on the Trustee's alleged failure to comply with the express notice provision of the Term Sheet. But "'the purpose of the good faith doctrine in contract law is to protect the reasonable expectations of the parties by implying terms in the agreement.'" Terry, 47 F. Supp. 3d at 1274 (emphasis in original) (quoting A.I. Transport v. Imperial Premium Fin., Inc., 862 F. Supp. 345, 347–48 (D. Utah 1994)). Mr. Geringer "conflates [the two types of actions] by alleging that [the Trustee] breached the implied covenant of good faith and fair dealing by breaching the express terms of the [contract]." Id. (emphasis added). This he cannot do. Id. at 1275.

The Trustee is entitled to summary judgment on Mr. Geringer's claim for breach of the implied covenant of good faith and fair dealing.

\* \* \*

**<u>ORDER</u>**

For the foregoing reasons, Defendant D. Ray Strong's Motion for Summary Judgment (ECF No. 76) is GRANTED.

DATED this 7th day of November, 2017.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge